

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 29, 2017**

United States Bankruptcy Judge

---

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| ADPT DFW HOLDINGS LLC, *et al.*,[1] | § | Case No. 17-31432 |
| | § | |
| Debtors. | § | Jointly Administered under Case No. 17-31432 |
| | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DEBTORS' THIRD AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

On September 26, 2017, this Court commenced a hearing (the "Confirmation Hearing")[2]

to consider confirmation of the *Debtors' Third Amended Joint Plan of Reorganization Under*

---

[1]    The Debtors include all of the affiliated entities that are listed on the Appendix, attached hereto.

*Chapter 11 of the Bankruptcy Code* [Dkt. No. 719] (the "Plan"), proposed by the above-referenced debtors and debtors-in-possession (collectively, the "Debtors"). This Court makes the following findings of fact and conclusions of law (the "Findings and Conclusions") in support of the *Order Confirming Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Confirmation Order"):

1.       The following record (the "Record") was established to support confirmation of the Plan:

(a)       All exhibits which were admitted into evidence during the Confirmation Hearing, including the *Plan Supplement* [Dkt. No. 589, as amended by Dkt. Nos. 632, 678, 771, and 790] (collectively, the "Plan Supplement");

(b)       The testimony that was provided by witnesses, either through live testimony, declaration, or by proffer prior to or during the Confirmation Hearing;

(c)       The evidence in respect of the transmittal and service of the solicitation packages [Dkt. Nos. 542, 599, 600, 612, 691, and 736], all of which was filed with this Court and admitted into evidence (the "Solicitation Notices");

(d)       The evidence regarding tabulation of votes on the Plan which was filed with this Court [Dkt. Nos. 718 and 745] (the "Voting Report") and admitted into evidence;

(e)       The entire record of the Debtors' chapter 11 cases (the "Chapter 11 Cases") and the docket maintained by the Clerk of this Court and/or Epiq Bankruptcy Solutions, LLC ("Epiq"), its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at the hearings held before this Court during the pendency of these Chapter 11 Cases, as to all of which this Court took judicial notice at the Confirmation Hearing;[3] and

---

[2]    Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement (defined below), as applicable.

[3]    This Court takes judicial notice of the docket in these Chapter 11 Cases maintained by the clerk of this Court and/or its duly appointed agent, including, without limitation, all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before this Court during these Chapter 11 Cases, including, without limitation, the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing.

(f)     The statements and argument of counsel on the record at the Confirmation Hearing, and all papers and pleadings filed with this Court in support of, in opposition to, or otherwise submitted in connection with, confirmation of the Plan, including the *Debtors' Brief in Support of, and Omnibus Response to Objections to, Confirmation of Debtors' Third Amended Joint Chapter 11 Plan of Reorganization* [Dkt. No. 778].

2.      The evidence that was admitted into the Record in support of confirmation of the Plan and all related matters demonstrates, by a clear preponderance of the evidence, that the Plan is confirmable and should be confirmed.  The failure specifically to describe, include, or refer herein to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan, the Plan Supplement, and all related documents be approved and confirmed in their entirety as if set forth verbatim herein.

3.      The Plan, as supported by the Record, satisfies all applicable requirements under title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the Northern District of Texas (the "Local Rules") and the Plan is in the best interests of the Debtors and their bankruptcy estates (the "Estates"), and therefore should be confirmed.

4.      As presented at the Confirmation Hearing and as provided for herein, the consensual resolution of certain objections to confirmation of the Plan and the cure amounts for certain non-Debtor counterparties satisfy all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and are in the best interests of the Debtors and their Estates and supported by the Record and therefore should be approved.  All objections to confirmation of the Plan not withdrawn or resolved by agreement at or prior to the Confirmation Hearing are overruled on the merits, or are otherwise disposed of, as set forth herein and in the Confirmation Order.

5.      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by this Court at the Confirmation Hearing are hereby incorporated herein for all purposes to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

6.      The Record amply supports confirmation of the Plan, and this Court will issue the Conformation Order confirming the Plan.

**A.      Jurisdiction and Venue**

7.      This Court has subject matter jurisdiction to confirm the Plan pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b).

**B.      Background**

8.      On April 19, 2017 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors remain in possession of their assets and continue to operate and manage their businesses as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108. On May 1, 2017, the Official Unsecured Creditors' Committee was appointed by the United States Trustee. On June 7, 2017, this Court ordered the appointment of an equity security holders' committee for the estate of Adeptus Health Inc. No trustee or examiner has been appointed in these cases.

**C.      The Disclosure Statement and Plan**

9.      On August 1, 2017, this Court issued its *Order (I) Approving Disclosure Statement, (II) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or*

*Reject The Debtors' Chapter 11 Plan, (III) Scheduling a Confirmation Hearing, and (IV) Approving Related Notice Procedures* [Dkt. No. 515] (the "<u>Disclosure Statement Order</u>") approving the *Disclosure Statement for Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 514] (the "<u>Disclosure Statement</u>") in accordance with section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018, and establishing certain deadlines relating to confirmation of the Plan.

10.     On or before August 4, 2017, the Debtors mailed the Disclosure Statement and related solicitation materials to solicit votes for the Plan. *See* Dkt. No. 542. This Court previously determined that, by order entered September 14, 2017 at Dkt. No. 720, pursuant to Bankruptcy Rule 3019, the Debtors were authorized to modify the Second Amended Plan (as reflected in the Plan) and that they were not required to resolicit the Plan as a result of such modifications.

11.     The Plan, including the 9019 Settlement, is the result of extensive arms' length negotiations among the Debtors, the Deerfield Parties, the Creditors' Committee, and the Equity Committee and is supported by each of these parties. No evidence was submitted by any objecting party sufficient to rebut the Debtors' evidence concerning the good faith, arms' length nature of negotiations regarding the 9019 Settlement and the Plan.

**D.     Notice**

12.     As set forth in the Record, the Debtors complied with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable laws in connection with: the solicitation of votes on the Plan; the provision of appropriate and adequate notice, including with respect to (a) the dates of the Confirmation Hearing, (b) the September 11, 2017 deadline for filing and serving objections to confirmation and for voting on the Plan, (c) the September 22, 2017 deadline for filing and serving objections to the

modifications to the Second Amended Plan as embodied in the Plan, (d) the September 25, 2017 deadline for responding to objections to Plan confirmation, and (e) all other relevant deadlines related to the Plan. *See* Dkt. Nos. 542, 599, 600, 612, 691, and 736.

13.    As such, the notice provided with respect to all matters relating to the solicitation of votes on, and the confirmation of, the Plan was adequate and proper and satisfied the requirements of due process with respect to all creditors, equity holders, and parties-in-interest who were provided actual or constructive notice.

**E.    Voting**

14.    Because the Plan provides for substantive consolidation of all of the Debtors' Estates and because, based on the Record, substantive consolidation is appropriate, the votes of Classes should be tabulated on a "per plan" basis. *In re Enron Corp.*, No. 01-16034 (AJG), 2004 Bankr. LEXIS 2549, at *234-36 (Bankr. S.D.N.Y. July 15, 2004) (finding that section 1129(a)(10) requirements are met on a "per plan" basis in confirming joint chapter 11 plan for substantively consolidated cases); *In re Tribune Co.*, 464 B.R. 126, 183 (Bankr. D. Del. 2011) (noting that Bankruptcy Code section 1129(a)(10)) is evaluated on a "per plan" basis in substantively consolidated cases).    Therefore, consistent with section 1129(a)(10) of the Bankruptcy Code, the Voting Report properly reflects the tabulation of votes to accept or reject the Plan.

15.    As set forth in the Record, each Class of Claims and Interests either is (a) impaired pursuant to section 1124 of the Bankruptcy Code and voted to accept the Plan under section 1126 of the Bankruptcy Code and for purposes of section 1129(a)(8)(A) of the Bankruptcy Code, (b) not impaired under section 1124 of the Bankruptcy Code and for the purposes of section 1129(a)(8)(B) of the Bankruptcy Code and is deemed to have accepted the Plan, or (c) impaired pursuant to section 1124 of the Bankruptcy Code and voted to reject the

Plan under section 1126 of the Bankruptcy Code, but is receiving treatment that satisfies the applicable requirements of section 1129(b) of the Bankruptcy Code.

**F.    Approval of 9019 Settlement**

16.    The negotiations surrounding the 9019 Settlement were conducted in good faith and at arms' length, and the 9019 Settlement is of benefit to the Debtors' Estates and represents a fair and reasonable compromise of the issues in dispute in these Chapter 11 Cases and resolves potential objections to confirmation of the Plan and the Trustee/Exclusivity Motion (as defined in the Disclosure Statement).  The 9019 Settlement also benefits the Estates by eliminating the need to engage in extensive and costly litigation over, among other issues, the allocation of Causes of Action between the Estates and because funding provided by the Equity Funders will enable the Litigation Trust Trustee to maximize recoveries on account of the Litigation Trust Causes of Action.  The terms and conditions of the 9019 Settlement are embodied in the terms of the Plan, and are an integral part of the Plan.

17.    This Court has considered the following with respect to the 9019 Settlement: (a) the probability of success, the complexity and likely duration of the litigation involved and any attendant expense, inconvenience, and delay regarding confirmation of the Plan, (b) that the 9019 Settlement resolves the potential objections by the Equity Committee to the Plan and the Trustee/Exclusivity Motion (as defined in the Disclosure Statement), and (c) all other factors bearing on the reasonableness of the compromise embodied in the 9019 Settlement.  Absent the 9019 Settlement, the Debtors' emergence from Chapter 11 would have been delayed, administrative expenses would have increased, and the ultimate result would be uncertain, all to the detriment of the Debtors' Estates and their respective stakeholders and other parties-in-interest.

18.     After giving due consideration to the above factors and Record, this Court finds that the 9019 Settlement (a) is fair, equitable, reasonable, and is within the range of potential outcomes of the litigation and (b) is in the best interest of the Debtors, their Estates, and all other parties-in-interest in these Chapter 11 Cases, including all creditors and interest holders.  In addition, the Record establishes that sound business justifications exist for the Debtors to enter into the 9019 Settlement embodied in the Plan.  Specifically, the Plan represents a consensual and immediate resolution of numerous, complex disputes among the parties to the 9019 Settlement, and affords significant value to the Debtors' estates. Each component of the 9019 Settlement underlying the Plan, and the treatment of creditors as provided under the Plan, is an integral, integrated, and inextricably linked part of the Plan that is not severable from the entirety of the 9019 Settlement and the Plan.  The 9019 Settlement not only avoids costly litigation and delays, but also provides the means to effectively reorganize the Debtors' businesses.  Therefore, the 9019 Settlement satisfies the applicable standards of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and should be approved in its entirety.

19.     The 9019 Settlement incorporates the settlement of claims as between Eligible Holders and the Deerfield Parties.  The 9019 Settlement Consideration offered to Eligible Holders is to induce Eligible Holders to compromise and release any claims that electing Eligible Holders may hold against the Released Parties.  The 9019 Settlement Consideration is not being offered to Eligible Holders to compromise any claims that any Debtor estate may hold against a Released Party.  The period of time specified in the Plan for Eligible Holders to opt out of the 9019 Settlement is adequate and appropriate under the circumstances.  The Deerfield Parties would not have offered the Eligible Holders the 9019 Settlement Consideration without the release by Eligible Holders of the Released Parties.

G.      **Implementation of the Plan**

20.     Article V of the Plan provides the means for implementing the Plan.  The provisions of Article V of the Plan and the transactions and transfers to be implemented pursuant to the Restructuring Transactions are consistent with and permissible under section 1123(a)(5) of the Bankruptcy Code and are consistent with the interests of creditors, equity holders, and public policy.

21.     Each of the Restructuring Transactions is necessary and appropriate to facilitate and ensure the feasibility of the Plan, preserve tax attributes (if any), facilitate the reorganization, and maximize value for the Debtors, their Estates, creditors, and other parties-in-interest. Approval of the Restructuring Transactions is within the authority of this Court pursuant to section 1123(a) of the Bankruptcy Code and otherwise in furtherance of the general principles of the Bankruptcy Code.  The Restructuring Transactions represent the exercise of the sound business judgment of the Debtors, will benefit the Debtors' Estates, and are proposed in good faith.

22.     The entry of the Confirmation Order  constitutes authorization of this Court for the Debtors and their representatives to take or cause to be taken all actions necessary, reasonable, or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date, including without limitation, the Restructuring Transactions.  All such actions taken or caused to be taken consistent with the terms of the Confirmation Order and the Plan shall be deemed to have been authorized and approved by this Court without further approval, act, or action under any applicable law, order, rule, or regulation.

H.      **New Board of Reorganized Debtors**

23.     The new board of directors for Reorganized Debtors shall consist of the following individuals:  Bryan Sendrowski; Adam Grossman; Leslie Henshaw; Frank Williams; and Greg

Scott, Executive Chairman.    As set forth in the Plan Supplement, Mr. Sendrowski, Mr. Grossman, Ms. Henshaw, and Mr. Williams shall not receive compensation for their roles as board members.  Mr. Scott will receive compensation for a two-year commitment to serve as Executive Chairman.    The post-confirmation compensation structure disclosed in the Plan Supplement was disclosed for information purposes only in accordance with section 1129(a)(5) of the Bankruptcy Code, and nothing in the Confirmation Order, the Plan, or the Plan Supplement shall operate to approve or direct the implementation of the compensation structure as disclosed.

## I.    New Securities Under the Plan

24.    As the consideration to be paid to holders of Allowed Deerfield Secured Claims and Allowed DIP Facility Claims, the Reorganized Debtors will issue New Equity Interests on the Effective Date for distribution to holders of Allowed Deerfield Secured Claims and Allowed DIP Facility Claims.

25.    The offer, sale, issuance, and/or distribution of each of the New Equity Interests is duly authorized.    Moreover, the New Equity Interests are being offered, sold, issued, or distributed (a) by the Debtors, which are not underwriters as defined in section 1145(b) of the Bankruptcy Code, (b) under the Plan, and (c) in exchange for Claims against one or more of the Debtors, or principally in exchange for such Claims and partly for cash or property, within the meaning of section 1145(a)(1) of the Bankruptcy Code, and therefore, the offer, sale, issuance, and/or distribution of the New Equity Interests by the Debtors are exempt from the requirements of section 5 of the Securities Act of 1933 and any state or local law requiring registration prior to the offering, issuance, distribution, or sale of a security on account of the applicability of section 1145(a)(1) of the Bankruptcy Code.

26.    Pursuant to section 1146 of the Bankruptcy Code, (a) the issuance, transfer, or exchange of any securities, instruments, or documents, (b) the creation of any Lien, mortgage, deed of trust, or other security interest, (c) all sale transactions consummated by the Debtors and approved by this Court on and after the Confirmation Date through and including the Effective Date, including any transfers effectuated under this Plan, (d) any assumption, assignment, or sale by the Debtors of their interests in unexpired leases of nonresidential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, and (e) the issuance, renewal, modification, or securing of indebtedness by such means and the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

### J.    Claims for Payment of Taxes From Responsible Parties

27.    Section 2.4 of the Plan provides that each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, Cash from the Reorganized Debtors in an amount equal to the Allowed Amount of such Claim; *provided* that Allowed Priority Tax Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession,

shall be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities. Such treatment of Allowed Priority Tax Claims is consistent with the requirements of the Bankruptcy Code.

## K. Notice of the Confirmation Hearing and Cure Amounts

28. Actual written notice of the Confirmation Hearing, and a reasonable opportunity to object or be heard with respect thereto was provided to, among other parites: (a) the Office of the United States Trustee; (b) the Debtors' equity holders; (c) all entities known to have, or to have asserted, any lien, claim, encumbrance, or other property interest in or upon any of the Debtors' assets; (d) all taxing authorities for those jurisdictions in which the Debtors' assets are located; (e) the Internal Revenue Service; (f) all counterparties to the Debtors' unexpired leases and executory contracts; (g) all parties that filed a notice of appearance and request for service of papers in these Chapter 11 Cases; (h) all relevant state and federal environmental authorities; and (i) all known creditors of the Debtors. Such notice was adequate, reasonable, and proper notice of the time and place of the Confirmation Hearing and the opportunity to object and be heard with respect thereto.

29. The Debtors also gave notice of the proposed cure amount (the "Cure Amount") to each non-debtor counterparty to an executory contract or unexpired lease that the Debtors seek to assume under the Plan (collectively, the "Assumed Contracts"). The service of such Cure Notice was good, sufficient, and appropriate under the circumstances and no further notice need be given to any party in respect of establishing a Cure Amount for the respective Assumed Contract. Non-debtor counterparties to the Assumed Contracts have had a sufficient, reasonable, and appropriate opportunity to object to the Cure Amount. The Debtors received objections to

the Cure Amounts for certain non-debtor counterparties to the Assumed Contracts and have either resolved or established a process to resolve all such objections.

30. As further evidenced by the certificates and publication of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Confirmation Hearing and the assumption of the Assumed Contracts has been provided in accordance with Bankruptcy Rules 2002, 6006, and 9014. *See* Dkt. Nos. 542, 599, 600, 612, 691, and 736. The Debtors also have complied with all obligations to provide notice of the Confirmation Hearing and the assumption of the Assumed Contracts. The foregoing notices were adequate, sufficient, and proper under the circumstances, and no other or further notice of the Confirmation Hearing or the assumption of the Assumed Contracts is required.

31. The disclosures made by the Debtors concerning the Confirmation Hearing and the assumption of the Assumed Contracts were reasonable, complete, and adequate under the circumstances. *See* Disclosure Statement Order at ¶ 2. Such notices also comply with the provisions of the Bankruptcy Rules, the Federal Rules of Civil Procedure, and the Local Rules.

**L.    Creation of the Litigation Trust**

32. The Adeptus Litigation Trust (the "Litigation Trust") is approved and all necessary parties are hereby authorized to execute the Litigation Trust Agreement for the Adeptus Litigation Trust in substantially the form set forth in the Plan Supplement (the "Litigation Trust Agreement"). The final form of the Litigation Trust Agreement as attached to these Findings and Conclusions as **Exhibit 1** is hereby approved.

33. The creation of the Litigation Trust is reasonable and appropriate and will: (a) perform the functions and take the actions provided for or permitted by the Plan, the Litigation Trust Agreement and in any other agreement executed by the Litigation Trust Trustee for the Litigation Trust pursuant to the Plan; (b) investigate, prosecute, settle, or abandon the

Litigation Trust Causes of Action assigned to the Litigation Trust under the Plan as Litigation Trust Assets and to distribute the proceeds of any recoveries therefrom in accordance with the terms of the Plan and the Litigation Trust Agreement; (c) object to, prosecute objections to, compromise and settle Disputed Medical Malpractice Claims, Subordinated Claims (including TRA Claims), General Unsecured Claims, and Convenience Class Claims; (d) make distributions to the Litigation Trust Beneficiaries in accordance with the Plan; (e) marshal, liquidate, and distribute the Litigation Trust Assets in an expeditious but orderly manner; and (f) effectuate the 9019 Settlement, including providing the opt-out notice to Eligible Holders. The transactions to be consummated in connection with the transfer of the Litigation Trust Assets as set forth in the Plan are in the best interests of the Debtors, their Estates, and all other parties-in-interest, including all stakeholders, and otherwise satisfies the requirements of the Bankruptcy Code and Bankruptcy Rules, and should be approved.

34. Notwithstanding any other provision of the Plan, the Plan Supplement, any modification to the Plan Supplement, or this Confirmation Order, upon the Effective Date, all Causes of Action against University of Colorado Health, Texas Health Resources, and/or Dignity Health (each, a "Joint Venture Partner"); UCHealth Partners, LLC, FTH DFW Partners LLC, and/or AGH Phoenix LLC (each a "JV"); and their respective members and subsidiaries (together with the Joint Venture Partners and the JVs, collectively, the "JV Parties"), shall vest in the Reorganized Debtors and are expressly excluded from the Litigation Trust Assets and the Litigation Trust Causes of Action; *provided*, that, in the event that any operating agreement of any JV Partner is rejected, modified, or terminated and such rejection, modification, or termination results in a Class 5 Claim, all Causes of Action against the JV Parties relating to such Joint Venture Partner shall vest in the Litigation Trust, without further action from any party or

further order of this Court, and shall be included in the Litigation Trust Assets and the Litigation Trust Causes of Action.

35. Each of the JV Parties acknowledge and agree that it shall not object to the transfer of Causes of Action as set forth in paragraph 34 to the Litigation Trust and that any such transfer shall not create a defense, release, or setoff with respect to such Cause of Action.

36. The Litigation Trust will be administered by an initial trustee approved by this Court (the "Litigation Trust Trustee"). Pursuant to the terms of the Litigation Trust Agreement, Alan Carr of Drivetrain Advisers is appointed as the initial Litigation Trust Trustee.

**M. Releases, Exculpations, and Injunctions**

37. The Plan provides for various releases, exculpations, and injunctions pursuant to Sections 11.5, 11.6, 11.7, 11.8, 11.9, and 11.10, thereof, and such provisions, as modified by the Confirmation Order, are appropriate.

38. The releases, exculpations, and injunctions provided for by the Plan (a) are within the proper jurisdiction and purview of this Court under 28 U.S.C. § 1334; (b) are integral elements of the transactions incorporated into the Plan; (c) confer material benefit on, and are in the best interests of, the Debtors, their Estates, and their creditors; (d) are made in exchange for consideration; (e) are essential to the overall objectives of the Plan and resolve the Claims that are the subject of the releases, exculpations, and injunctions; (f) to the extent they impact claims against certain non-Debtors (such as the Debtors' officers and directors), such claims are channeled to insurance proceeds; and (g) are consistent with sections 105, 524, 1123, 1125, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

**N. Assumption of the Assumed Contracts**

39. The Debtors have exercised reasonable business judgment in determining whether to assume or reject each of the Debtors' executory contracts and unexpired leases under the

terms of the Plan and the Confirmation Order. The assumption of the Assumed Contracts pursuant to the terms of the Confirmation Order and the Plan is in the best interest of the Debtors and their Estates, creditors, and other parties-in-interest and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

40.     Each pre- or post-confirmation assumption or rejection of an executory contract or unexpired lease pursuant to Article IX of the Plan shall be legal, valid, and binding upon the applicable Debtor, and all non-Debtor parties to such executory contract or unexpired lease, as applicable, all to the same extent as if such assumption or rejection had been effectuated pursuant to an appropriate order of this Court entered before the Confirmation Date under section 365 of the Bankruptcy Code. Each of the executory contracts and unexpired leases to be assumed or rejected is deemed to be an executory contract or an unexpired lease, as applicable.

41.     As set forth in Article IX of the Plan and the Confirmation Order, the Plan constitutes a motion to assume the Assumed Contracts. Except as otherwise provided in a separate order of this Court, any non-Debtor party to an Assumed Contract was required to object to such assumption or to the Cure Amounts proposed by the Debtors in connection therewith, notice of which this Bankruptcy Court finds was reasonable and appropriate.

42.     All executory contracts and unexpired leases not rejected pursuant to the Plan shall be deemed assumed as of the Effective Date. Except as otherwise provided in a separate order of this Court or a stipulation filed of record, the respective Cure Amounts are the sole amounts necessary under sections 365(b)(1)(A) and (B) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Assumed Contracts.

43.     The Debtors have (a) cured and/or provided adequate assurance of cure of any and all defaults existing prior to the Effective Date under any of the Assumed Contracts, within

the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (b) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Effective Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.

44.    The Debtors have provided adequate assurance of their future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(b)(3) (to the extent applicable) of the Bankruptcy Code.

45.    Upon the entry of the Confirmation Order, (a) all of the requirements of section 365(b) will have been satisfied with respect to each Assumed Contract for which no timely objection was filed; (b) all rights to object to the assumption of any such Assumed Contract will have been waived; (c) except as otherwise provided in a stipulation filed of record or as this Court may hereafter determine is necessary and appropriate to effect the purpose of the Bankruptcy Code, all rights to object to the Cure Amounts with respect to any such Assumed Contracts will have been waived; and (d) the assumption of such Assumed Contracts are hereby approved.

46.    Each executory contract or unexpired lease to be rejected pursuant to the Plan is burdensome, and the rejection thereof is in the best interests of the Estates.

47.    The TRA is not an executory contract subject to assumption or rejection pursuant to section 365 of the Bankruptcy Code.  Upon the Effective Date, the TRA shall be deemed of no further force and effect as a result of the dissolution of PubCo.  Because the Deerfield Parties and their affiliates are not direct or indirect successors to PubCo, no TRA Claim shall be enforceable against the Reorganized Debtors or their affiliates.

**O.    Bankruptcy Rule 3020(e)**

48.    Good cause exists for waiving and eliminating the stay of the Confirmation Order

set forth in Bankruptcy Rule 3020(e). In particular, the Plan represents a fair and equitable compromise by and among the major parties-in-interest in the Chapter 11 Cases and should be consummated as expeditiously as possible. If the stay is not waived and eliminated, the ability of the Debtors to consummate the Plan could be delayed.

**P. Substantive Consolidation of the Debtors' Estates is Appropriate.**

49. Section 5.1 of the Plan provides for the substantive consolidation of the Debtors' Estates.

50. Substantive consolidation under the Plan is appropriate because –

(a) The Debtors maintained consolidated financial statements.

(b) All of the Debtors are commonly owned.

(c) All of the Debtors have guaranteed financing that was provided by the Deerfield Parties.

(d) Segregating and ascertaining assets and liabilities of the individual Debtors would be difficult.

(e) Assets and business functions of the Debtors were commingled.

(f) PubCo is the direct or indirect owner of all of the Debtors.

(g) The Debtors have common officers and directors.

(h) All salaries and expenses of all of the Debtors were paid from a consolidated cash management system.

(i) Creditors did not rely on the Debtors' separate identities but dealt with the Debtors as a single economic unit.

Moreover, creditors of the Debtors dealt with the Debtors as a single economic unit and did not rely on their separate identity when extending credit, and the affairs of the Debtors are so entangled that consolidation benefits all creditors of all of the Estates. This Court reserves the right to enter a separate memorandum of law regarding the substantive consolidation of the

Debtors' Estates, and the findings of fact and conclusions of law set forth in such memorandum of law are incorporated herein.

**Q.      The Plan Complies with Section 1129 of the Bankruptcy Code.**

51.      The Debtors demonstrated that the Plan satisfies the provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.

52.      As demonstrated by the Record, the Plan complies with all relevant sections of the Bankruptcy Code, the Bankruptcy Rules, and applicable non-bankruptcy law relating to the confirmation of the Plan.

**R.      The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code.**

53.      The Plan complies with section 1129(a)(1) of the Bankruptcy Code because, as demonstrated below and in the findings contained herein, the Plan complies fully with the requirements of sections 1121, 1122 and 1123 of the Bankruptcy Code, as well as the other applicable provisions of the Bankruptcy Code.

(a)      *The Plan Complies with Section 1121 of the Bankruptcy Code.*

54.      The Debtors have satisfied section 1121 of the Bankruptcy Code in that the Debtors have standing to file a plan.  Furthermore, the Plan reflects the date it was filed with the Court and identifies the entities submitting it as Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).

(b)      *The Plan Complies with Section 1122 of the Bankruptcy Code.*

55.      The Plan's classification scheme conforms to section 1122 of the Bankruptcy Code, as the Plan separately classifies Claims based on valid business and legal reasons.  The Plan's classification scheme is appropriate because it is based on the respective legal rights of each holder of a Claim against or Interest in the Estates and the proposed classifications were not proposed to create a consenting impaired class or to manipulate class voting.

(c)    *The Plan Complies with Section 1123 of the Bankruptcy Code.*

56.    The Plan complies fully with each requirement of section 1123(a) of the

Bankruptcy Code:

(i)    Under section 1123(a)(1), a plan must "designate, subject to section 1122 of this title, classes of claims, other than claims of a kind specified in section 507(a)(1), 507(a)(2), or 507(a)(8) of this title, and classes of interest." Article III of the Plan designates classes of Claims and Interests that require classification.

(ii)    Under section 1123(a)(2), a plan must "specify any class of claims or interests that is not impaired." Article III of the Plan specifies which classes of Claims and Interests are not impaired under the Plan.

(iii)    Under section 1123(a)(3), a plan must "specify the treatment of any class of claims or interests that is impaired." Article III of the Plan specifies which classes of Claims and Interests are impaired, and their treatment, under the Plan.

(iv)    Under section 1123(a)(4), a plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." As reflected in the treatment set forth in Article III of the Plan, the treatment of each of the Claims and Interests in each particular class is the same as the treatment of each of the other Claims or Interests in such class or the holder of a particular claim or interest has agreed to a less favorable treatment of such particular claim or interest.

(v)    Under section 1123(a)(5), a plan must "provide adequate means for the plan's implementation." Article V and various other provisions of the Plan provides adequate means for implementation of the Plan.

(vi)    Under section 1123(a)(6), a plan must "provide for the inclusion in the charter of the debtor, if the debtor is a corporation . . . , of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends." As set forth in the Plan Supplement, the Debtors have satisfied section 1123(a)(6).

(vii)    Under section 1123(a)(7), a plan must "contain only provisions that are consistent with the interests of creditors and equity security holders and

with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." The composition of the boards of directors of the Reorganized Debtors have been disclosed in the Plan Supplement, and commencing on the Effective Date, each of the directors of the Reorganized Debtors shall serve pursuant to the terms of the applicable organizational documents of the Reorganized Debtors. The initial Litigation Trust Trustee is identified herein.

(viii) Under section 1123(a)(8), where a debtor is an individual, a plan must provide for the payment to creditors under the plan of all or such portion of earnings from personal services performed by the debtor after the commencement of the case or other future income of the debtor as is necessary for the execution of the plan. The Debtors are not individuals. Therefore, the provisions of section 1123(a)(8) of the Bankruptcy Code are inapplicable.

57. As referenced in Section N above, the Plan provides for the assumption of certain of the Debtors' executory contracts and unexpired leases.

58. The Debtors' decisions pursuant to the Plan regarding the rejection and assumption of executory contracts and unexpired leases are based on sound business judgment and are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, holders of Claims, and other parties-in-interest in the Debtors' Chapter 11 Cases. Article IX of the Plan states the means by which all monetary defaults under each executory contract and unexpired lease are to be satisfied pursuant to section 365 of the Bankruptcy Code. All Cure Amounts which may be required by section 365(b)(1) of the Bankruptcy Code under any executory contract or unexpired lease that are assumed under the Plan shall be made by the Debtors. Accordingly, the requirements of sections 1123(b)(2) and 365 of the Bankruptcy Code have been satisfied.

## S. The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code.

59. Consistent with section 1129(a)(2) of the Bankruptcy Code, the Debtors have complied with the applicable provisions of title 11, including, specifically, sections 1125 and

1126 of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order governing notice, disclosure and solicitation in connection with the Plan, the Disclosure Statement, and all other matters considered by this Court in connection with the Chapter 11 Cases.

60.    On August 1, 2017, after due notice and a hearing, this Court entered the Disclosure Statement Order, which, *inter alia,* approved the Disclosure Statement, finding that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code and established procedures for the Debtors' solicitation of votes on the Plan.

61.    As evidenced by the Solicitation Notices, in accordance with section 1125 of the Bankruptcy Code and pursuant to the Disclosure Statement Order, the Debtors (through Epiq) solicited acceptances or rejections of the Plan from holders of Claims in each class of impaired Claims that are to receive distributions under the Plan.   Classes 1 and 2 of the Plan are unimpaired, and as a result, pursuant to section 1126(f) of the Bankruptcy Code, holders of Claims in those classes are conclusively presumed to have accepted the Plan.   Classes 3, 4, 5, 6, 7, 8, and 9 are impaired, entitled to receive distributions under the Plan, and have been solicited to vote on the Plan.   The Debtors have complied with the applicable provisions of section 1126 of the Bankruptcy Code.

**T.    The Plan Complies with Section 1129(a)(3) of the Bankruptcy Code.**

62.    Having examined the totality of the circumstances surrounding the Plan, this Court has determined that the Plan was proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.   The Plan achieves the rehabilitative and reorganizational goals of the Bankruptcy Code by restructuring the Debtors' obligations and providing the means through which the Debtors may continue to operate as a viable enterprise.   Attendant to the continued operation of the enterprise is the ability of the

Debtors to preserve jobs and continue business operations. The Plan is the result of arms' length discussions and negotiations among the Debtors, the Deerfield Parties, the Creditors' Committee, the Equity Committee, and other key and relevant stakeholders. Significantly, the Plan incorporates the 9019 Settlement, which resolved significant litigation pending among the parties, as well as related proceedings and potential objections to confirmation of the Plan. The Debtors, the Deerfield Parties, the Creditors' Committee, and the Equity Committee and each of their respective officers, directors, employees, advisors, and professionals (a) acted in good faith in negotiating, formulating, and proposing, where applicable, the Plan and the agreements, compromises, settlements (including the 9019 Settlement), transactions, transfers, and documentation contemplated thereby, and (b) will be acting in good faith in proceeding to (i) consummate and implement the Plan and the agreements, compromises, settlements (including the 9019 Settlement), transactions, transfers, and documentation contemplated thereby, including the Plan Supplement documents, and (ii) take any actions authorized, directed or contemplated herein or in the Plan. The Plan, with its compromises and proposed treatments, clearly promotes the objectives and purposes of the Bankruptcy Code.

**U.      The Plan Complies With Section 1129(a)(4) of the Bankruptcy Code.**

63.      Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees and expenses paid by the plan proponent, by a debtor, or by a person issuing securities or acquiring property under a plan, be subject to approval of the court as reasonable. Section 2.2 of the Plan provides that each Professional who holds or asserts a Fee Claim incurred prior to the Effective Date shall be required to file with this Court and serve on all parties required to receive such notice, a request for payment no later than forty-five (45) days after the Effective Date. A Fee Claim that has been properly filed and served pursuant to Section 2.2 of the Plan shall become an Allowed Claim only to the extent allowed by Final Order.

## V.    The Plan Complies With Section 1129(a)(5) of the Bankruptcy Code.

64.    Section 1129(a)(5) of the Bankruptcy Code requires that a plan proponent disclose the identity and affiliations of the proposed officers, directors, or voting trustee of the debtors after confirmation of the plan; that the appointment or continuance of such officers, directors, or voting trustee be consistent with the interests of creditors and equity interest holders and with public policy; and that there be disclosure of the identity and compensation of any insiders to be retained or employed by the reorganized debtors.  Section 5.8 of the Plan describes the process pursuant to which the members of the new board for the Reorganized Debtors will be determined.   The identification of the new board was disclosed herein and in the Plan Supplement.    The Plan Supplement discloses the identity and compensation of any insiders to be retained or employed by the Reorganized Debtors.  The identification of the proposed officers and directors of the Reorganized Debtors satisfies all requirements of section 1129(a)(5) of the Bankruptcy Code.

## W.    The Plan Complies With Section 1129(a)(6) of the Bankruptcy Code.

65.    Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over the rates charged by the reorganized debtor in the operation of its businesses approve any rate change provided for in the plan.  The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.  Therefore, the provisions of section 1129(a)(6) of the Bankruptcy Code are inapplicable.

## X.    The Plan Complies with Section 1129(a)(7) of the Bankruptcy Code.

66.    As set forth fully in the Debtors' liquidation analysis and by the evidence adduced in the Confirmation Hearing, the "best interests" test is satisfied as to all impaired classes of Claims and Interests which have not accepted the Plan.  Furthermore, a liquidation under chapter

7 as set forth in the liquidation analysis would profoundly and adversely affect the ultimate proceeds available for distribution to all holders of Allowed Claims in the Chapter 11 Cases. Liquidation under chapter 7 would result in substantially smaller distributions being made to creditors than those provided for under the Plan due to, *inter alia*, (a) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a chapter 7 trustee for bankruptcy and other necessary professional advisors; (b) the anticipated erosion in value of assets in the context of the expeditious liquidation required under chapter 7 and the "forced sale" environment in which such a liquidation would likely occur; (c) the adverse effects of the Debtors' business as a result of the likely departure of key employees, doctors, and professional staff; (d) the substantial increases in Claims which would have to be satisfied on an administrative or priority basis or on parity with creditors in the Chapter 11 Cases; (e) the reduction of value associated with a chapter 7 trustee's operation of the Debtors' businesses; (f) the likelihood of contentious litigation by and between parties-in-interest and the high costs attendant thereto, including the litigation otherwise resolved through the 9019 Settlement; and (g) the substantial delay in distributions to the holders of Claims and Interests that would likely ensue in a chapter 7 liquidation. Finally, consummation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization.

67. In the context of the erosion of the asset values and the increased costs and delay associated with the administration of a chapter 7 case, confirmation of the Plan provides each rejecting creditor and interest holder with a recovery that is not less than such holder would receive in a chapter 7 liquidation of the Debtors, as demonstrated by the liquidation analysis annexed to the Disclosure Statement.

68. Based upon the foregoing, the Plan satisfies the requirements of section

1129(a)(7) of the Bankruptcy Code. Therefore, the "best interests" test is satisfied with respect to Classes 3, 4, 5, 6, 7, 8, and 9.

**Y. The Plan Complies with Sections 1129(a)(8) and (b)(1) of the Bankruptcy Code.**

69. Section 1129(a)(8) is satisfied with respect to the Claims in Classes 1 and 2 as such Claims are not impaired under the Plan and are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.

70. Based on the Record and uncontroverted evidence, on a consolidated basis, Classes 3, 5, and 6, which are impaired, accepted the Plan. Although no votes were cast by holders of Class 4 Claims, this Court finds that Class 4 is deemed to have accepted the Plan and is not subject to "cram down" pursuant to section 1129(b) of the Bankruptcy Code.

71. Accordingly, other than Classes 7, 8, and 9 (each of which is subject to the "cram down" provisions of section 1129(b) of the Bankruptcy Code, as discussed below), section 1129(a)(8) of the Bankruptcy Code is satisfied.

**Z. The Plan Complies with Section 1129(a)(9) of the Bankruptcy Code.**

72. Section 1129(a)(9) of the Bankruptcy Code requires that persons holding Claims entitled to priority under section 507(a) of the Bankruptcy Code receive specified cash payments under the Plan.

73. Consistent with section 1129(a)(9)(A), Section 2.1 of the Plan provides that each holder of an Allowed Administrative Expense Claim shall be repaid in full in cash or receive other treatment rendering them unimpaired. Consistent with section 1129(a)(9)(A), Section 2.2 of the Plan provides that all Allowed Fee Claims shall be paid by the Debtors.

74. Consistent with section 1129(a)(9)(C) of the Bankruptcy Code, Section 2.4 of the Plan provides that each holder of an Allowed Priority Tax Claim will be repaid in full in cash or receive other treatment rendering them unimpaired and will be paid in accordance with the terms

set forth in section 1129(a)(9)(C) of the Bankruptcy Code. Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

**AA.     The Plan Complies with Section 1129(a)(10) of the Bankruptcy Code.**

75.     For purposes of section 1129(a)(10) of the Bankruptcy Code, the Plan is a single plan for the substantively consolidated basis, and votes to accept or reject the Plan will therefore be considered on a "per plan" basis. The plan has been accepted by numerous impaired classes, including Classes 3, 5, and 6. Thus, for each of the Debtors as substantively consolidated, at least one non-insider class of impaired creditors accepted the Plan.

**BB.     The Plan Complies with Section 1129(a)(11) of the Bankruptcy Code.**

76.     The Debtors have demonstrated in accordance with section 1129(a)(11) of the Bankruptcy Code that confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of a debtor or any successor to a debtor under a plan, unless such liquidation or reorganization is proposed in the plan. This Court finds that the Plan proposes a reorganization of the Debtors' assets.

77.     This Court finds that the Plan is feasible pursuant to section 1129(a)(11). For purposes of determining whether the Plan satisfies the feasibility standard, the Debtors, their professional advisors, as well as other parties-in-interest, have demonstrated the ability of the Debtors to fulfill their obligations under the Plan. Based on the Record, this Court concludes that the Debtors' financial projections are reasonable, credible, and made in good faith and that the Debtors will have sufficient means to meet all of their obligations under the Plan, including without limitation, payments of the Cure Amounts and performance under the Assumed Contracts. The Record provides ample support in order to determine that the Reorganized Debtors will emerge from bankruptcy as a viable, financially healthy business enterprise, unlikely to be in need of further financial reorganization.

78. Based on the foregoing, the Plan satisfies the feasibility standard of section 1129(a)(11).

**CC.   The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code.**

79. Section 2.1 of the Plan provides that the Debtors or Reorganized Debtors, as applicable, shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6). Any fees due as of the date of confirmation of the Plan will be paid in full on the Effective Date. After confirmation, the Reorganized Debtors shall pay United States Trustee quarterly fees as they accrue until these Chapter 11 Cases are closed by this Court. The Plan accordingly satisfies section 1129(a)(12) of the Bankruptcy Code. The Reorganized Debtors shall file post-confirmation quarterly operating reports until these Chapter 11 Cases are closed, which shall be prepared in accordance with the guidelines of the United States Trustee.

**DD.   The Plan Complies with Section 1129(a)(13) of the Bankruptcy Code.**

80. Section 1129(a)(13) of the Bankruptcy Code requires that a plan continue after its effective date all retiree benefits at the level established pursuant to section 1114(e)(1)(B) or (g) of the Bankruptcy Code, at any time prior to confirmation of the plan, for the duration of the period a debtor has obligated itself to provide such benefits. The Debtors do not have any obligations to pay retiree benefits, and therefore, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

**EE.   The Plan Complies with Sections 1129(a)(14) of the Bankruptcy Code.**

81. Section 1129(a)(14) of the Bankruptcy Code requires if a debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor must have paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition. The Debtors are not individuals;

accordingly, the Plan satisfies the requirements of sections 1129(a)(14) of the Bankruptcy Code.

**FF.    The Plan Complies with Sections 1129(a)(15) of the Bankruptcy Code.**

82.    Section 1129(a)(15) of the Bankruptcy Code requires that if a debtor is an individual, and the holder of an allowed unsecured claim has objected to confirmation of the plan, the property to be distributed to the holder must be not less than the value required by section 1129(a)(15).   The Debtors are not individuals; accordingly, the Plan satisfies the requirements of sections 1129(a)(15) of the Bankruptcy Code.

**GG.    The Plan Complies with Section 1129(a)(16) of the Bankruptcy Code.**

83.    Section 1129(a)(16) of the Bankruptcy Code requires that all transfers of property of a plan shall be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation of trust.   The Plan does not provide for any property transfers by a corporation or trust that is not a moneyed, business, or commercial corporation or trust; accordingly, the Plan satisfies the requirements of section 1129(a)(16) of the Bankruptcy Code.

**HH.    The Plan Complies with Section 1129(b) of the Bankruptcy Code.**

84.    Certain classes of Claims and Interests did not vote to accept the Plan.   Classes 7, 8, and 9 (collectively, the "Cram Down Classes") voted to reject the Plan, and accordingly, such Classes of Claims and Interests are subject to "cram down" pursuant to section 1129(b).

85.    Section 1129(b) of the Bankruptcy Code provides that if all applicable requirements of section 1129(a) are met, save for section 1129(a)(8), a Plan may be confirmed so long as it does not discriminate unfairly and it is fair and equitable with respect to each class of claims and equity interests that is impaired and has not accepted the Plan.

86. This Court finds, as set forth below, that the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to the Cram Down Classes. Accordingly, the Debtors have satisfied the "cram down" requirements in section 1129(b) of the Bankruptcy Code.

**(1) The Plan Is Fair And Equitable With Respect To The Cram Down Classes.**

87. Sections 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii) provide that a plan is fair and equitable with respect to a class of impaired unsecured claims or equity interests that has not voted to accept the plan if the plan provides that the holder of any claim or interest that is junior to the claims or equity interests of such class will not receive or retain under the plan on account of such junior claim or interest any property.[4]

88. The Plan satisfies the absolute priority rule with respect to each of the Cram Down Classes pursuant to section 1129(b)(2)(B)(ii) and (C)(ii) of the Bankruptcy Code. No holder of a Claim or Interest that is junior to any of the Cram Down Classes will receive any distribution on account of such junior Claim or Interest until the Claims or Interests in such Cram Down Classes are satisfied in full. Further, no holder of a Claim or Interest that is senior to any Claim or Interest in a Cram Down Class will receive more than one hundred percent (100%) payment for its Claim or Interest. The Plan provides that holders of Allowed Priority Non-Tax Claims in Class 1 will be paid in full in Cash. The Plan provides that holders of Allowed Other Secured Claims in Class 2 will have their legal, equitable, and contractual rights Reinstated. The Plan provides that holders of Allowed Deerfield Secured Claims in Class 3 will receive distributions equal to the full amount of their Claims. Finally, holders of unsecured Claims and holders of Interests shall receive distributions in accordance with the priorities set forth in the

---

[4]    Section 1129(b)(2)(A), which sets forth the absolute priority rule as to secured claims, is not applicable here because (a) Claims in Class 2 are not impaired under the Plan and thus deemed to accept the Plan and (b) Class 3 voted to accept the Plan.

Bankruptcy Code. Accordingly, the "cram down" of the Cram Down Classes is appropriate under section 1129(b)(2)(B)(ii) of the Bankruptcy Code.

89. The 9019 Settlement Consideration payable by the Deerfield Parties to Electing Holders does not implicate the "fair and equitable" test of section 1129(b). Specifically, Electing Holders are not receiving their Pro Rata share of the 9019 Settlement Consideration on account of their Existing Common Equity Interests. Instead, Electing Holders are receiving their Pro Rata share of the 9019 Settlement Consideration because the Deerfield Parties are entering into a direct settlement with the Electing Holders pursuant to which the Electing Holders will receive the 9019 Settlement Consideration in exchange for a direct release of claims against the Released Parties.

90. The Plan also satisfies the absolute priority rule with respect to Interests in Classes 8 and 9 pursuant to section 1129(b)(2)(C)(ii) of the Bankruptcy Code. Holders of Claims are not receiving more than 100% of their Allowed Claims. Because Classes 8 and 9 represent the lowest priority of any interests in the Debtors, there are no holders of any interests that are junior to the interests of Classes 8 and 9 that are receiving or retaining anything under the Plan. Additionally, Class 8 Existing Preferred Equity Interests are entitled to priority over Class 9 Existing Common Interests, and therefore, requiring holders of Class 8 Interests to be paid in full before holders of Class 9 Interests receive any distributions is appropriate.

91. Therefore, the Plan satisfies the requirements of sections 1129(b)(2)(B) and 1129(b)(2)(C) for all Classes of Claims and Interests that did not vote to accept the Plan and is thus fair and equitable with respect to those Classes.

### (2) The Plan Does Not Unfairly Discriminate With Respect To The Cram Down Classes.

92. The Plan also does not discriminate unfairly with respect to the Cram Down

Classes.

93.     The Plan's treatment of the Cram Down Classes is not unfairly discriminatory, for similarly situated holders of Claims or Interests will receive substantially similar treatment irrespective of Class.

94.     The creation of the Class 6 Convenience Class is reasonable and necessary for administrative convenience because it reduces the number and amount of Claims in Class 5, and separate review of electing Claims would consume the Debtors' resources with very little benefit.  Any instances of differing treatment under the Plan in regards to the Convenience Claim treatment in Class 6 are justified and permitted under section 1122(b) of the Bankruptcy Code and applicable law and do not unfairly discriminate against unsecured Claims in Class 5.

95.     Thus, this Court finds that the Plan does not unfairly discriminate with respect to the Cram Down Classes, and the "cram down" test is satisfied.

II.     **The Plan Complies with Section 1125(e) of the Bankruptcy Code.**

96.     Based on the Record in these Chapter 11 Cases, the Debtors and each of their respective current or former officers, directors, members, employees, agents, representatives, advisors, and attorneys have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances to the Plan.

97.     To the extent that there is a conflict between the terms and conditions of the Confirmation Order and the Findings and Conclusions, the terms and conditions of the Confirmation Order shall govern.

## SUMMARY

98.     The Plan meets the requirements of chapter 11 of the Bankruptcy Code and

should be confirmed.  An order consistent with these Findings and Conclusions will be entered.

### END OF ORDER ###

Submitted by:

Louis R. Strubeck, Jr. (SBT 19425600)
John N. Schwartz (SBT 00797397)
Liz Boydston (SBT 24053684)
Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Telephone: (214) 855-8000
Facsimile:  (214) 855-8200
louis.strubeck@nortonrosefulbright.com
john.schwartz@nortonrosefulbright.com
liz.boydston@nortonrosefulbright.com

*Bankruptcy Counsel to the Debtors and
Debtors in Possession*

**Appendix**
**(Sorted Alphabetically)**

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 1. | Adeptus Health Colorado Holdings LLC | 17-31448 | 30-0857912 |
| 2. | Adeptus Health Inc. | 17-31434 | 46-5037387 |
| 3. | Adeptus Health LLC | 17-31435 | 32-0432716 |
| 4. | Adeptus Health Management LLC | 17-31455 | 32-0448472 |
| 5. | Adeptus Health Phoenix Holdings LLC | 17-31461 | 35-2487075 |
| 6. | Adeptus Health Ventures LLC | 17-31466 | 36-4802997 |
| 7. | ADPT Columbus Holdings LLC | 17-31471 | 36-4835265 |
| 8. | ADPT DFW Holdings LLC | 17-31432 | 30-0857947 |
| 9. | ADPT Houston Holdings LLC | 17-31479 | 30-0857977 |
| 10. | ADPT New Orleans Holdings LLC | 17-31486 | 32-0479313 |
| 11. | ADPT New Orleans Management LLC | 17-31493 | Pending |
| 12. | ADPT-AZ MPT Holdings LLC | 17-31497 | 61-1772047 |
| 13. | ADPT-AZ RE Holdings LLC | 17-31502 | 47-5241979 |
| 14. | ADPT-CO MPT Holdings LLC | 17-31508 | 47-3512571 |
| 15. | ADPT-CO RE Holdings LLC | 17-31512 | 47-3565144 |
| 16. | ADPT-Columbus MPT Holdings LLC | 17-31519 | Pending |
| 17. | ADPT-Columbus RE Holdings LLC | 17-31523 | Pending |
| 18. | ADPT-DFW MPT Holdings LLC | 17-31527 | 81-0772445 |
| 19. | ADPT-DFW RE Holdings LLC | 17-31532 | 81-0785981 |
| 20. | ADPT-Houston MPT Holdings LLC | 17-31533 | 30-0914017 |
| 21. | ADPT-Houston RE Holdings LLC | 17-31536 | 61-1781468 |
| 22. | ADPT-LA MPT Holdings LLC | 17-31542 | 81-0752643 |
| 23. | ADPT-LA RE Holdings LLC | 17-31545 | 81-0758384 |
| 24. | AJNH Medical Center LLC | 17-31548 | 36-4729524 |
| 25. | Alamo Heights SA Medical Center LLC | 17-31553 | 35-2547715 |
| 26. | Algiers Medical Center LLC | 17-31556 | 32-0455775 |
| 27. | Alvin Medical Center LLC | 17-31561 | 90-1008817 |
| 28. | Anthem Medical Center LLC | 17-31564 | 37-1740119 |
| 29. | Antoine Medical Center LLC | 17-31440 | 35-2537322 |
| 30. | Arizona General ER LLC | 17-31444 | 90-1025598 |
| 31. | Atascocita 1960 Medical Center LLC | 17-31449 | 36-4780687 |
| 32. | Austin Brodie Medical Center LLC | 17-31454 | 61-1713294 |
| 33. | Baytown Medical Center LLC | 17-31456 | 30-0840445 |
| 34. | Bella Terra Medical Center LLC | 17-31459 | 80-0957867 |
| 35. | Bender's Landing Medical Center LLC | 17-31468 | 37-1752156 |
| 36. | Blacklick Woods Medical Center LLC | 17-31475 | 30-0805532 |
| 37. | Briar Forest-Eldridge Medical Center LLC | 17-31482 | 35-2481862 |
| 38. | Broad Wagoner Medical Center LLC | 17-31488 | 35-2492252 |
| 39. | Brushy Creek Medical Center LLC | 17-31494 | 38-3923792 |
| 40. | Camelback 83rd Medical Center LLC | 17-31498 | 38-3945993 |
| 41. | Cedar Park Lakeline Medical Center LLC | 17-31505 | 35-2493773 |
| 42. | Centennial Medical Center LLC | 17-31509 | 32-0436930 |
| 43. | Center Street DP Medical Center LLC | 17-31516 | 35-2453223 |
| 44. | Chandler Germann Medical Center LLC | 17-31521 | 80-0938469 |
| 45. | Chandler Heights Medical Center LLC | 17-31525 | 32-0456525 |

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 46. | Cinco Ranch Medical Center LLC | 17-31529 | 61-1744313 |
| 47. | Colonial Lakes Medical Center LLC | 17-31535 | 90-1004044 |
| 48. | Colorado General Hospital LLC | 17-31539 | 35-2506314 |
| 49. | Conroe Medical Center LLC | 17-31544 | 37-1743660 |
| 50. | Converse Medical Center LLC | 17-31551 | 30-0820305 |
| 51. | Copperwood Medical Center LLC | 17-31554 | 84-1697403 |
| 52. | Creekside Forest Medical Center LLC | 17-31557 | 36-4781064 |
| 53. | Culebra-Tezel Medical Center LLC | 17-31559 | 90-1020838 |
| 54. | De Zavala Medical Center LLC | 17-31560 | 30-0879734 |
| 55. | Dublin Medical Center LLC | 17-31563 | 80-0965351 |
| 56. | Eagles Nest Medical Center LLC | 17-31565 | 04-3847518 |
| 57. | East Mesa Medical Center LLC | 17-31437 | 90-1033851 |
| 58. | East Pflugerville Medical Center LLC | 17-31439 | 90-1023315 |
| 59. | East Riverside Medical Center LLC | 17-31442 | 38-3973259 |
| 60. | ECC Management, LLC | 17-31443 | 16-1711879 |
| 61. | FCER Management, LLC | 17-31447 | 11-3798239 |
| 62. | First Choice ER, LLC | 17-31436 | 27-5348156 |
| 63. | First Texas Hospital Cy-Fair LLC | 17-31451 | 47-3480091 |
| 64. | Four Points Medical Center LLC | 17-31464 | 38-3938637 |
| 65. | Friendswood Medical Center LLC | 17-31469 | 38-3916132 |
| 66. | FTH Houston Partners LLC | 17-31474 | 47-3466871 |
| 67. | Garland Centerville Medical Center LLC | 17-31477 | 35-2537960 |
| 68. | Gilbert  Medical Center LLC | 17-31481 | 80-0940827 |
| 69. | Gleannloch Farms Medical Center LLC | 17-31485 | 35-2481256 |
| 70. | Glendale Medical Center LLC | 17-31489 | 90-1012820 |
| 71. | Goodyear Medical Center LLC | 17-31490 | 90-1007336 |
| 72. | Greenville Stacy Medical Center LLC | 17-31492 | 38-3926926 |
| 73. | Guadalupe River Medical Center LLC | 17-31496 | 35-2514826 |
| 74. | Hampden Tower Medical Center LLC | 17-31499 | 38-3928757 |
| 75. | Helotes Medical Center LLC | 17-31501 | 36-4782313 |
| 76. | Hilliard  Medical Center LLC | 17-31504 | 35-2491198 |
| 77. | Houston 9520 Jones Medical Center LLC | 17-31507 | 32-0432459 |
| 78. | Houston  FM 1960 Medical Center LLC | 17-31511 | 37-1783329 |
| 79. | Katy ER Center LLC | 17-31514 | 45-2583773 |
| 80. | Keller Medical Center LLC | 17-31517 | 61-1736669 |
| 81. | Kingwood Medical Center LLC | 17-31520 | 80-0684495 |
| 82. | Kuykendahl Medical Center LLC | 17-31524 | 34-2028269 |
| 83. | La Porte Medical Center LLC | 17-31526 | 80-0927953 |
| 84. | Lakewood Forest Medical Center LLC | 17-31530 | 90-1013791 |
| 85. | League City Medical Center LLC | 17-31438 | 36-4766358 |
| 86. | Legacy Trails Medical Center LLC | 17-31441 | 61-1744649 |
| 87. | Lewis Center Medical Center LLC | 17-31445 | 32-0431791 |
| 88. | Litchfield Park Medical Center LLC | 17-31446 | 36-4801379 |
| 89. | Louetta Medical Center LLC | 17-31450 | 74-3178584 |
| 90. | Marrero Medical Center LLC | 17-31453 | 61-1753468 |
| 91. | Meadowbrook Heights Medical Center LLC | 17-31457 | 32-0448039 |
| 92. | Medical Center of Crosby Lynchburg LLC | 17-31458 | 38-3922039 |
| 93. | Medical Center of Spring Rayford Richards LLC | 17-31462 | 37-1747613 |

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 94. | Mesa Tierra Medical Center LLC | 17-31465 | 35-2523890 |
| 95. | Midlothian Medical Center LLC | 17-31470 | 30-0802928 |
| 96. | Mountain Park Ranch Medical Center LLC | 17-31473 | 38-3939092 |
| 97. | National Medical Professionals of Arizona LLC | 17-31478 | 37-1757007 |
| 98. | National Medical Professionals of Ohio LLC | 17-31483 | 30-0829176 |
| 99. | New Orleans East Medical Center LLC | 17-31510 | 61-1753435 |
| 100. | Northwest Harris County Medical Center LLC | 17-31538 | 36-4781722 |
| 101. | Ohio General ER LLC | 17-31540 | 38-3918055 |
| 102. | Ohio General Hospital LLC | 17-31547 | 80-0956267 |
| 103. | OpFree Licensing LP | 17-31549 | 01-0831027 |
| 104. | OpFree RE Investments, Ltd. | 17-31558 | 06-1740727 |
| 105. | OpFree, LLC | 17-31562 | 34-2028263 |
| 106. | Pearland 518 Medical Center LLC | 17-31566 | 90-1025398 |
| 107. | Pearland Parkway Medical Center LLC | 17-31567 | 51-0576704 |
| 108. | Pearland Sunrise Medical Center LLC | 17-31568 | 90-1001726 |
| 109. | Pflugerville Medical Center LLC | 17-31569 | 45-2552050 |
| 110. | Potranco Medical Center LLC | 17-31570 | 80-0966887 |
| 111. | Provinces Medical Center LLC | 17-31571 | 80-0967881 |
| 112. | Queen Creek Medical Center LLC | 17-31572 | 32-0457346 |
| 113. | Rosenberg Medical Center LLC | 17-31452 | 80-0964882 |
| 114. | Roy Richard Medical Center LLC | 17-31460 | 35-2491802 |
| 115. | San Antonio Nacogdoches Medical Center LLC | 17-31463 | 80-0937326 |
| 116. | San Tan Valley Medical Center LLC | 17-31467 | 36-4801184 |
| 117. | Seguin Foster Medical Center LLC | 17-31472 | 35-2532650 |
| 118. | Sienna Plantation Medical Center LLC | 17-31476 | 90-1009094 |
| 119. | South Bend Medical Center LLC | 17-31480 | 61-1770288 |
| 120. | South Carrier Medical Center LLC | 17-31484 | 32-0429602 |
| 121. | South Green Oaks Medical Center LLC | 17-31487 | 90-1012518 |
| 122. | Spanish Oaks Medical Center LLC | 17-31491 | 90-1012951 |
| 123. | Spring 2920 Medical Center LLC | 17-31495 | 36-4776092 |
| 124. | Spring Green Medical Center LLC | 17-31500 | Pending |
| 125. | SSH Medical Center LLC | 17-31503 | 77-0666943 |
| 126. | Sterling Ridge Medical Center II LLC | 17-31506 | 32-0439505 |
| 127. | Sterling Ridge Medical Center LLC | 17-31513 | 16-1711883 |
| 128. | Summerwood Medical Center LLC | 17-31515 | 30-0802964 |
| 129. | Surprise Medical Center LLC | 17-31518 | 90-1012038 |
| 130. | SW Chandler Medical Center LLC | 17-31522 | 90-1032288 |
| 131. | Sycamore School Medical Center LLC | 17-31528 | 35-2494277 |
| 132. | Tempe McClintock Baseline Medical Center LLC | 17-31531 | 38-3923748 |
| 133. | Tempe Rural-Baseline Medical Center LLC | 17-31534 | 30-0852296 |
| 134. | Texas Regional Hospital LLC | 17-31537 | 37-1753820 |
| 135. | Victory Lakes Medical Center LLC | 17-31541 | 37-1751372 |
| 136. | Wadsworth-Belleview Medical Center LLC | 17-31543 | 35-2486458 |
| 137. | Waterside Medical Center LLC | 17-31546 | 36-4767886 |
| 138. | White Settlement Medical Center LLC | 17-31550 | 38-3970573 |
| 139. | Wilderness-Hardy Oak Medical Center LLC | 17-31552 | 80-0954867 |
| 140. | William Cannon Medical Center LLC | 17-31555 | 35-2493839 |

(Sorted Numerically By Case Number)

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 1. | ADPT DFW Holdings LLC | 17-31432 | 30-0857947 |
| 2. | Adeptus Health Inc. | 17-31434 | 46-5037387 |
| 3. | Adeptus Health LLC | 17-31435 | 32-0432716 |
| 4. | First Choice ER, LLC | 17-31436 | 27-5348156 |
| 5. | East Mesa Medical Center LLC | 17-31437 | 90-1033851 |
| 6. | League City Medical Center LLC | 17-31438 | 36-4766358 |
| 7. | East Pflugerville Medical Center LLC | 17-31439 | 90-1023315 |
| 8. | Antoine Medical Center LLC | 17-31440 | 35-2537322 |
| 9. | Legacy Trails Medical Center LLC | 17-31441 | 61-1744649 |
| 10. | East Riverside Medical Center LLC | 17-31442 | 38-3973259 |
| 11. | ECC Management, LLC | 17-31443 | 16-1711879 |
| 12. | Arizona General ER LLC | 17-31444 | 90-1025598 |
| 13. | Lewis Center Medical Center LLC | 17-31445 | 32-0431791 |
| 14. | Litchfield Park Medical Center LLC | 17-31446 | 36-4801379 |
| 15. | FCER Management, LLC | 17-31447 | 11-3798239 |
| 16. | Adeptus Health Colorado Holdings LLC | 17-31448 | 30-0857912 |
| 17. | Atascocita 1960 Medical Center LLC | 17-31449 | 36-4780687 |
| 18. | Louetta Medical Center LLC | 17-31450 | 74-3178584 |
| 19. | First Texas Hospital Cy-Fair LLC | 17-31451 | 47-3480091 |
| 20. | Rosenberg Medical Center LLC | 17-31452 | 80-0964882 |
| 21. | Marrero Medical Center LLC | 17-31453 | 61-1753468 |
| 22. | Austin Brodie Medical Center LLC | 17-31454 | 61-1713294 |
| 23. | Adeptus Health Management LLC | 17-31455 | 32-0448472 |
| 24. | Baytown Medical Center LLC | 17-31456 | 30-0840445 |
| 25. | Meadowbrook Heights Medical Center LLC | 17-31457 | 32-0448039 |
| 26. | Medical Center of Crosby Lynchburg LLC | 17-31458 | 38-3922039 |
| 27. | Bella Terra Medical Center LLC | 17-31459 | 80-0957867 |
| 28. | Roy Richard Medical Center LLC | 17-31460 | 35-2491802 |
| 29. | Adeptus Health Phoenix Holdings LLC | 17-31461 | 35-2487075 |
| 30. | Medical Center of Spring Rayford Richards LLC | 17-31462 | 37-1747613 |
| 31. | San Antonio Nacogdoches Medical Center LLC | 17-31463 | 80-0937326 |
| 32. | Four Points Medical Center LLC | 17-31464 | 38-3938637 |
| 33. | Mesa Tierra Medical Center LLC | 17-31465 | 35-2523890 |
| 34. | Adeptus Health Ventures LLC | 17-31466 | 36-4802997 |
| 35. | San Tan Valley Medical Center LLC | 17-31467 | 36-4801184 |
| 36. | Bender's Landing Medical Center LLC | 17-31468 | 37-1752156 |
| 37. | Friendswood Medical Center LLC | 17-31469 | 38-3916132 |
| 38. | Midlothian Medical Center LLC | 17-31470 | 30-0802928 |
| 39. | ADPT Columbus Holdings LLC | 17-31471 | 36-4835265 |
| 40. | Seguin Foster Medical Center LLC | 17-31472 | 35-2532650 |
| 41. | Mountain Park Ranch Medical Center LLC | 17-31473 | 38-3939092 |
| 42. | FTH Houston Partners LLC | 17-31474 | 47-3466871 |
| 43. | Blacklick Woods Medical Center LLC | 17-31475 | 30-0805532 |
| 44. | Sienna Plantation Medical Center LLC | 17-31476 | 90-1009094 |
| 45. | Garland Centerville Medical Center LLC | 17-31477 | 35-2537960 |

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 46. | National Medical Professionals of Arizona LLC | 17-31478 | 37-1757007 |
| 47. | ADPT Houston  Holdings LLC | 17-31479 | 30-0857977 |
| 48. | South Bend Medical Center LLC | 17-31480 | 61-1770288 |
| 49. | Gilbert  Medical Center LLC | 17-31481 | 80-0940827 |
| 50. | Briar  Forest-Eldridge Medical Center LLC | 17-31482 | 35-2481862 |
| 51. | National Medical Professionals of Ohio LLC | 17-31483 | 30-0829176 |
| 52. | South Carrier Medical Center LLC | 17-31484 | 32-0429602 |
| 53. | Gleannloch Farms Medical Center LLC | 17-31485 | 35-2481256 |
| 54. | ADPT New Orleans Holdings LLC | 17-31486 | 32-0479313 |
| 55. | South Green Oaks Medical Center LLC | 17-31487 | 90-1012518 |
| 56. | Broad Wagoner Medical Center  LLC | 17-31488 | 35-2492252 |
| 57. | Glendale Medical Center LLC | 17-31489 | 90-1012820 |
| 58. | Goodyear Medical Center LLC | 17-31490 | 90-1007336 |
| 59. | Spanish Oaks Medical Center LLC | 17-31491 | 90-1012951 |
| 60. | Greenville Stacy Medical Center LLC | 17-31492 | 38-3926926 |
| 61. | ADPT New Orleans Management LLC | 17-31493 | Pending |
| 62. | Brushy Creek Medical Center LLC | 17-31494 | 38-3923792 |
| 63. | Spring 2920 Medical Center LLC | 17-31495 | 36-4776092 |
| 64. | Guadalupe River Medical Center LLC | 17-31496 | 35-2514826 |
| 65. | ADPT-AZ MPT Holdings LLC | 17-31497 | 61-1772047 |
| 66. | Camelback 83rd Medical Center LLC | 17-31498 | 38-3945993 |
| 67. | Hampden Tower Medical Center LLC | 17-31499 | 38-3928757 |
| 68. | Spring Green Medical Center LLC | 17-31500 | Pending |
| 69. | Helotes Medical Center LLC | 17-31501 | 36-4782313 |
| 70. | ADPT-AZ  RE Holdings LLC | 17-31502 | 47-5241979 |
| 71. | SSH Medical Center LLC | 17-31503 | 77-0666943 |
| 72. | Hilliard  Medical Center LLC | 17-31504 | 35-2491198 |
| 73. | Cedar Park Lakeline  Medical Center LLC | 17-31505 | 35-2493773 |
| 74. | Sterling Ridge Medical Center II LLC | 17-31506 | 32-0439505 |
| 75. | Houston 9520 Jones Medical Center LLC | 17-31507 | 32-0432459 |
| 76. | ADPT-CO MPT Holdings LLC | 17-31508 | 47-3512571 |
| 77. | Centennial Medical Center LLC | 17-31509 | 32-0436930 |
| 78. | New Orleans East Medical Center LLC | 17-31510 | 61-1753435 |
| 79. | Houston  FM 1960 Medical Center LLC | 17-31511 | 37-1783329 |
| 80. | ADPT-CO  RE Holdings LLC | 17-31512 | 47-3565144 |
| 81. | Sterling Ridge Medical Center LLC | 17-31513 | 16-1711883 |
| 82. | Katy ER Center LLC | 17-31514 | 45-2583773 |
| 83. | Summerwood Medical Center LLC | 17-31515 | 30-0802964 |
| 84. | Center Street DP Medical Center LLC | 17-31516 | 35-2453223 |
| 85. | Keller Medical Center LLC | 17-31517 | 61-1736669 |
| 86. | Surprise Medical Center LLC | 17-31518 | 90-1012038 |
| 87. | ADPT-Columbus MPT Holdings LLC | 17-31519 | Pending |
| 88. | Kingwood Medical Center LLC | 17-31520 | 80-0684495 |
| 89. | Chandler Germann Medical Center LLC | 17-31521 | 80-0938469 |
| 90. | SW Chandler Medical Center LLC | 17-31522 | 90-1032288 |
| 91. | ADPT-Columbus RE Holdings  LLC | 17-31523 | Pending |
| 92. | Kuykendahl Medical Center LLC | 17-31524 | 34-2028269 |
| 93. | Chandler Heights Medical Center LLC | 17-31525 | 32-0456525 |

| # | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 94. | La Porte Medical Center LLC | 17-31526 | 80-0927953 |
| 95. | ADPT-DFW MPT Holdings LLC | 17-31527 | 81-0772445 |
| 96. | Sycamore School Medical Center LLC | 17-31528 | 35-2494277 |
| 97. | Cinco Ranch Medical Center LLC | 17-31529 | 61-1744313 |
| 98. | Lakewood Forest Medical Center LLC | 17-31530 | 90-1013791 |
| 99. | Tempe McClintock Baseline Medical Center LLC | 17-31531 | 38-3923748 |
| 100. | ADPT-DFW RE Holdings LLC | 17-31532 | 81-0785981 |
| 101. | ADPT-Houston MPT Holdings LLC | 17-31533 | 30-0914017 |
| 102. | Tempe Rural-Baseline Medical Center LLC | 17-31534 | 30-0852296 |
| 103. | Colonial Lakes Medical Center LLC | 17-31535 | 90-1004044 |
| 104. | ADPT-Houston RE Holdings LLC | 17-31536 | 61-1781468 |
| 105. | Texas Regional Hospital LLC | 17-31537 | 37-1753820 |
| 106. | Northwest Harris County Medical Center LLC | 17-31538 | 36-4781722 |
| 107. | Colorado General Hospital LLC | 17-31539 | 35-2506314 |
| 108. | Ohio General ER LLC | 17-31540 | 38-3918055 |
| 109. | Victory Lakes Medical Center LLC | 17-31541 | 37-1751372 |
| 110. | ADPT-LA MPT Holdings  LLC | 17-31542 | 81-0752643 |
| 111. | Wadsworth-Belleview Medical Center LLC | 17-31543 | 35-2486458 |
| 112. | Conroe Medical Center LLC | 17-31544 | 37-1743660 |
| 113. | ADPT-LA  RE Holdings LLC | 17-31545 | 81-0758384 |
| 114. | Waterside Medical Center LLC | 17-31546 | 36-4767886 |
| 115. | Ohio General Hospital LLC | 17-31547 | 80-0956267 |
| 116. | AJNH Medical Center LLC | 17-31548 | 36-4729524 |
| 117. | OpFree Licensing LP | 17-31549 | 01-0831027 |
| 118. | White Settlement Medical Center LLC | 17-31550 | 38-3970573 |
| 119. | Converse Medical Center LLC | 17-31551 | 30-0820305 |
| 120. | Wilderness-Hardy Oak Medical Center LLC | 17-31552 | 80-0954867 |
| 121. | Alamo Heights SA Medical Center LLC | 17-31553 | 35-2547715 |
| 122. | Copperwood Medical Center LLC | 17-31554 | 84-1697403 |
| 123. | William Cannon Medical Center LLC | 17-31555 | 35-2493839 |
| 124. | Algiers Medical Center LLC | 17-31556 | 32-0455775 |
| 125. | Creekside Forest Medical Center LLC | 17-31557 | 36-4781064 |
| 126. | OpFree RE Investments,  Ltd. | 17-31558 | 06-1740727 |
| 127. | Culebra-Tezel Medical Center LLC | 17-31559 | 90-1020838 |
| 128. | De Zavala Medical Center LLC | 17-31560 | 30-0879734 |
| 129. | Alvin Medical Center LLC | 17-31561 | 90-1008817 |
| 130. | OpFree, LLC | 17-31562 | 34-2028263 |
| 131. | Dublin Medical Center LLC | 17-31563 | 80-0965351 |
| 132. | Anthem Medical Center LLC | 17-31564 | 37-1740119 |
| 133. | Eagles Nest Medical Center LLC | 17-31565 | 04-3847518 |
| 134. | Pearland 518 Medical Center LLC | 17-31566 | 90-1025398 |
| 135. | Pearland Parkway Medical Center LLC | 17-31567 | 51-0576704 |
| 136. | Pearland Sunrise Medical Center LLC | 17-31568 | 90-1001726 |
| 137. | Pflugerville Medical Center LLC | 17-31569 | 45-2552050 |
| 138. | Potranco Medical Center LLC | 17-31570 | 80-0966887 |
| 139. | Provinces Medical Center LLC | 17-31571 | 80-0967881 |
| 140. | Queen Creek Medical Center LLC | 17-31572 | 32-0457346 |